## STATE v. EDWARD FITZPATRICK.

The offence committed by one, who "having voted in one town, or ward, or district," at the same election, "shall vote in another town, or ward, or district," as defined in the 27th section of the election law, is a *local* offence; and the places at which the two votings took place necessarily enter into the description of it.

An indictment for this offence, which does not allege the places of voting with legal certainty, cannot be supported under the statute; and if the places of voting are alleged in the indictment, a variance from them or either of them in proof would be fatal to a conviction.

Where such an indictment contained two counts, which laid the two votings alternately, in order of time, in Providence and North Providence, and the jury could not determine from the proof in which town the *last*, or illegal voting, took place, it was held, that they were not warranted in returning a verdict of guilty upon either or both of the counts of the indictment.

EDWARD FITZPATRICK was indicted at the May term of the court of common pleas, 1856, for the county of Providence, for fraudulently voting twice, at the April election of that year, for general officers and members of the general assembly. The indictment contained two counts; *the first* of which charged, that the prisoner, " on the 2d day of April, in the year of our Lord, 1856, it being the annual election in this state for the election of general officers, and for the election of senators and representatives to the general assembly, with force and arms, did wilfully and fraudulently vote in said election in the city of Providence, in said county, he the said Edward Fitzpatrick having, before that time, on the same day, voted in said election in the town of North Providence in said county, contrary," &c. The *second count* charged, in the same form, that the prisoner " did wilfully and fraudulently vote in said election in the town of North Providence in said county, he, the said Edward Fitzpatrick, having before that, on the same day, voted in said election in the city of Providence, in said county, contrary," &c.

At the trial before Mr. Justice Sherman, at the above term of the court of common pleas, evidence of the double voting of the prisoner at the election in Providence and North Providence, was submitted by the state to the jury; but it could not be ascertained from it, in which town the prisoner voted first, and in which therefore the double, and, *on that ground*, illegal vote,

23 *

was cast by him; and the counsel for the prisoner requested the court to charge the jury, that before they could render a verdict of guilty against the prisoner, they must find that the allegations in one or the other of the counts of the indictment were proved as laid; and that if there was no evidence to show in which place the defendant *first* voted, he could not be convicted; and that it was not sufficient merely to show that the defendant voted in both places on the same day; but the court refused so to rule, and charged the jury, that if they were satisfied from the evidence, that the defendant did, upon the same day, vote in Providence and North Providence, they were bound to return a verdict of guilty against the defendant, and that it was not material or necessary for the government to allege, or having alleged, to prove, in which of said places the defendant *first* voted. To this charge the defendant duly excepted, and the jury having found "the defendant guilty in manner and form as charged in the indictment against him," the exception was presented to the judge and duly allowed by him.

*Payne*, for the defendant, contended that the government were bound to prove the charge as laid in one or the other of the counts, as to the place in which the prisoner voted first and last, and that the proof reported supported neither count of the indictment.

*Hart*, Attorney-General, argued, that the order of time in which the prisoner voted was wholly immaterial to the offence created by the statute, which consisted, in double voting at the same election. He also contended, that the indictment need not have set forth in what order the defendant voted, and that hence the order of time though stated, need not be proved as laid, but might, as immaterial, be rejected as surplusage; and that even if the order in which the defendant voted was necessary to be alleged, the substance of the issue need only, according to the general rule, be proved, which in this case was the double voting; and that it being proved, that the defendant voted in both places at the same election, the substance of the issue was proved, inasmuch as the indictment stated his voting in the only two modes in which it was possible he could have voted twice, and the proof met the indictment and supported the general verdict.

*Payne*, in reply, argued, that the charge of the manner in which an offence was committed was essential in criminal proceedings; that the court must be able to apply the evidence to some one count or to both counts of the indictment, before they would be .warranted in passing sentence upon the prisoner; and that, in this case, they could not apply the evidence to either count, and certainly not to both.

He contended, that if a count would have been good in the general form suggested, yet that the charge being laid in the special manner shown, it must, in order to conviction, be proved as laid.

AMES, C. J. This indictment comes before us upon exceptions to the charge of the judge presiding at the trial below; and was framed under the 27th section of our election law, which provides that "If any person, in any election, shall fraudulently vote, not being qualified, *or having voted in one town, or ward, or district, shall vote in another town, or ward, or district,* he shall be fined one hundred dollars," &c.; which fine, together with all other forfeitures and punishments under the act, the 49th section provides shall be enforced by indictment in the supreme court or the court of common pleas. Supplement, Public Laws since Dig. of 1844, pp. 881, 888, 889.

The first clause of the section quoted was designed to prevent voting at elections by persons not qualified to vote; and the last, to which this bill of exceptions more immediately directs our attention, to prevent *double* voting, at the same election, by persons who might be qualified to vote once. The section describes the offence as one which must be committed in some *towns, wards,* or *districts,* and not in *the same* town, or ward, or district, since the words describing the offender are, "any one having voted in *one* town, or ward, or district, shall vote in *another* town, or ward, or district." The offence does not then consist in mere double voting, but in voting in two different *places* at the same election, those places, to be towns, or wards, or districts. It can only be described then with legal certainty, in an indictment, by naming the respective places in which the accused voted at the same election; describing them, also, as either towns, or wards, or districts, as the case may be.

Again, it will be noticed, that the offence of voting by one not qualified having been provided for by the first clause of the section, the clause in question is intended to apply, either wholly or principally, to the case of a person qualified to vote once at an election and in one place—who votes at the same election, again, in another place. In other words, it is the having voted once in one place, which, in the sense of this clause of the section, makes it an offence to vote at the same election at another place. It is not then the voting on and at the first time and place of voting which makes the offence, but the voting on and at the second time and place of voting which constitutes it ; for the first vote may have been a vote by a qualified voter at the place where he was qualified to vote ; but whether so or not, it is the voting a second time, in another place, at which this clause of the section is pointed, and not the voting without a qualification to vote. To describe then this statute offence with legal certainty, you must describe the order of time in which the accused voted,—that is, that having voted at the election in one town, ward, or district, naming the town, ward, or district, (which may have been a legal voting,) he again voted at the same election in another town, ward, or district, naming it, which *second* voting in *another* place really makes the offence, whether he was qualified otherwise to vote in this last place or not. The places then in which the accused voted are to be set forth not merely, as in ordinary cases, to give *venue*, but, in the order in which he voted at them, as a necessary part of the description of the offence charged. The offence is, as the books term it, in its nature, local ; that is, in the sense in which stealing from a dwelling-house, burglary, forcible entry, and the like, are local offences. The indictment must truly describe, and in the true order of his voting, the towns, wards, or districts in which the accused voted twice at the same election ; as in the instances just referred to, it must truly describe the house or estate in which, or in relation to which, the offence was committed.

This necessity was apprehended by the officer of the state who framed this indictment, and he accordingly charged the prisoner with the offence in two counts ; *in the first* of which, it is stated that he, " on the second day of April, in the year of

our Lord, 1856, it being the annual election in this state for the election of general officers and for the election of senators and representatives to the general assembly, with force and arms, did wilfully and fraudulently vote in said election in the city of Providence in said county, he, the said Edward Fitzpatrick, having before that on the same day voted in said election in the town of North Providence, in said county, contrary," &c., *and in the second* of which counts it is stated, that the prisoner, on the same day, " did wilfully and fraudulently vote in said election in the town of North Providence, in said county, he, the said Edward Fitzpatrick having before that, on the same day, voted in said election in the city of Providence, in said county, contrary," &c. It is now contended that this particularity of description of the places and order of voting was unnecessary, including, of course, the specification of which of the two votings was fraudulent, and this too, notwithstanding the indictment treats the prisoner, *first* as a qualified voter in North Providence, whose fraud consisted, having voted there, in voting again in Providence, and then *secondly* as a qualified voter in Providence, who having voted there, fraudulently voted in the same election at North Providence, not stating in terms indeed in which town he was actually qualified to vote, or whether he was qualified to vote in either. It is said, that a general count charging the prisoner with having voted twice at the same election in Providence and North Providence, would have been certain enough, without stating, in which town the fraudulent, or second vote, was cast; and hence, that the specification of this town in the indictment may be rejected as surplusage; the gist of the offence consisting in the fact of double voting at the same election in those towns, or in any towns in the county in which this election was held.

We cannot agree either with the premises or the conclusion in this proposition. We think, that to describe this offence with the certainty required by the rules of criminal pleading, it was necessary to set forth, especially upon the supposition which the indictment leaves open to us, that he was qualified to vote in one of these towns, in *which* town he cast his last or fraudulent vote; that as a local offence, in the sense above mentioned,

the offence of the prisoner could not be legally described without stating the town, ward, or district, in which the offence of casting the double or illegal vote was committed; and that a count in the general form proposed, and in which either of the two counts composing this indictment would be left if these descriptive words were rejected, would be fatally defective.

But again, even supposing that such a count would answer, it by no means follows, if the place in which the second or fraudulent vote was cast be descriptively stated in the indictment, that it must not be proved as laid. As said by Mr. Justice Story, in *United States* v. *Howard,* 3 Sumn. 15, 16, "no allegation, whether it be necessary or unnecessary, whether it be more or less particular, which is descriptive of the identity of that which is legally essential to the charge in the indictment, can ever be rejected as surplusage;" which is tantamount to saying that it must be proved as laid. The instances given by him in illustration, are the well-known instances of descriptive allegations, in an indictment for theft, of things stolen, as of " a black horse," or of "live tame turkeys," the former of which would not be satisfied by proof of the stealing of a horse of a different color, or the latter by proof of the stealing of dead turkeys. The same strictness of proof is required also where *a place* is mentioned in an indictment not as a matter of venue, but of local description. The rule in such cases is, that the place must be proved as laid, although it need not have been stated; and that even the variance of *the name* of the place in which the offence is laid from that in which it is proved to have been committed, as where, under one of the game acts, the indictment charged the offence " in a certain wood called Old Walk," and it appeared that the wood had always been called " Long Walk," and never " Old Walk," is fatal. Roscoe's Crim. Ev. 112, 5th Am. ed.; 3 Starkie's Ev. 1571; *Cranage's case,* Salk. 385; 2 Russell, 717; Owen's case, 1 Moo. C. C. 118; S. C. 2 Eng. C. C. 118.

As this indictment was framed then, we deem that it was essential to the conviction of the prisoner, that the government should prove either that the illegal or second vote was cast in the city of Providence, as laid in the *first* count, or in the town

of North Providence, as laid in the *second* count of the indictment. It appears by the bill of exceptions allowed by the judge who presided at the trial, that although the evidence disclosed that the prisoner did vote twice in the election—once in Providence and once in North Providence—it did not disclose in which of the places he cast the second or illegal vote charged, and so did not support either count of the indictment. In truth, it would only have supported a count of the general character spoken of in the argument, or one in which the offence was laid, in the alternative, as committed in the one or the other of the towns ; neither of which would have met the legal requisites of certainty. In this dilemma of the proof, the presiding judge, against the objection and notwithstanding the exception of the counsel for the prisoner, charged, " that if the jury were satisfied upon the evidence, that the defendant did, upon the same day vote in Providence and North Providence, (meaning, as we understand it, and at the same election) they were bound to return a verdict of guilty against the defendant ; and that it was not material or necessary for the government to allege, or having alleged, to prove, in which of said places the defendant first voted," tantamount to ruling, that it was not necessary for the government to prove in which of the places laid the prisoner cast the second or illegal vote. The consequence of this charge was, that the jury not being able from the evidence to find in which of the towns the prisoner cast the second or illegal vote, or committed the offence, found him guilty by a general verdict of committing it in both, and thereby rendered a verdict which was necessarily wrong. To have found according to the proof again, they should have found, that he cast the illegal or second vote, in the one or the other of the two towns, *which* they could not decide, and no sentence could have been passed upon a verdict so vague and uncertain, looking at the issue, as such an one would have been. Upon the proof, the court would not be justified in passing sentence against the prisoner, upon both counts, and, as argued by the counsel for the prisoner, only the jury can apply the proof to that one of the counts which truly describes his offence.

It is said that the substance of the issue, by an universal rule

of criminal as well as of civil proceedings, need only be proved ; that here the substantial question was, did the prisoner vote twice at the same election ; that this was clearly proved, and that the verdict ought therefore to stand.    The rule is un-doubted ; but we are satisfied, and have endeavored to show by reasoning and authority, that in such a case as this, and under an indictment framed as this is, the place or town in which it is alleged that the second or illegal vote was cast, and thereby the offence was committed, enters into and forms a part of the substance of the issue, and hence that the rule does not apply to the case at bar.

For these reasons the exception to the ruling of the court below is sustained, the verdict set aside, and a new trial in this case is granted, to be had in the court of common pleas next to be holden within and for the county of Providence.